EVERETT E. READ, petitioner for partition, *vs.* WILLIAM F. HILTON *et al.*

Androscoggin. Decided April 3, 1878.

*Deed. Married woman. Estoppel.*

J· R conveyed his one hundred acre farm to his daughter M for her life, with remainder to her heirs. In the lifetime of M, her daughter (M J R) joined in a warranty deed of thirty-nine acres of it to C. *Held,* that the death of the mother in the lifetime of the daughter confirmed C's title to M J R's share of the thirty-nine acres. *Held,* also, that the fact that M J R was married at the time she joined her husband in the deed did not raise the vexed question whether a married woman is estopped by the covenants in her deed from setting up an after acquired title against her grantee. The source of her title was the deed of her grandfather made long before hers.

ON REPORT.

PETITION FOR PARTITION.

*A. M. Pulsifer, W. W. Bolster & J. R. Hosley,* for the petitioner.

*N. Morrill,* for the respondents.

BARROWS, J. The farm, of which the petitioner claims to own an undivided half and prays to have the same set off to him in severalty, consists of one hundred acres or thereabouts, and was conveyed March 20, 1845, by John Randall to Margaret Read, wife of Ammi C. Read, and grandmother of the petitioner "for her use and benefit during her lifetime, and after her decease to her legal heirs, to them and their heirs and assigns forever."

Margaret Read had two children, Alvah J. Read, the father of the petitioner, and Margaret J., who intermarried with Oliver E. Randall in 1856. The respondents have whatever title to a part and parcel of this farm passed by a deed to John Carville, dated February 11, 1861, and executed by Margaret Read and her husband, her daughter Margaret J. Randall and her husband, and by Alvah J. Read and his wife, the parents of the petitioner, in which they assume to convey some thirty-nine acres by metes and bounds with general covenants of warranty.

Alvah J. Read died in 1861, and Margaret Read in 1866. Under this deed the case finds that the grantor of the respondents went into possession of the thirty-nine acres and he and they have had the exclusive possession thereof, with the consent of the co-tenants in the farm, for more than six years prior to the date of the petition for partition, and have made improvements thereon, and therefore they claim that these matters should be considered in making the partition in accordance with R. S., c. 88, § 16.

The petitioner denies that the respondents have any interest or estate in the premises, and, consequently, their right to the benefit of their possession and improvements under said section.

He claims that all the estate which passed to John Carville by virtue of the deed of February 11, 1861, from Margaret Read and her children, was the life estate of Margaret Read.

This claim is so obviously subversive of the intent and expectation of all the parties to that deed that it cannot be allowed, unless we find that some rule of law imperatively requires it.

We think that without touching the vexed question, whether the after acquired estate of a married woman enures to her grantee by way of estoppel, we may well hold that the respondents' grantor acquired Margaret J. Randall's interest in the premises con-

veyed. The foundation of the petitioner's title, as well as that of the respondents', is the deed first mentioned from John Randall to Margaret Read, which gave a life estate to Margaret herself, with remainder in fee to her heirs in accordance with statute provisions then and ever since in force in this state. R. S., 1841, c. 91, § 12. R. S., 1857 and 1871, c. 73, § 6. The most favorable view for the petitioner which can be taken is that it was a contingent remainder or an estate in expectancy in them during the life of Margaret Read. In other words, as by the deed of John Randall the estate was ultimately to vest in the heirs of Margaret Read, and as so long as she was living it was uncertain who her heirs would be, the titles of Alvah J. Read and Margaret J. Randall, respectively, to one-half of the farm when they joined with their mother in conveying the thirty-nine acres to Carville, were subject to the contingency of the death of Margaret Read in their life time.

They each had a contingent remainder, or estate in expectancy, of one-half the farm, which was to go to their respective heirs in the event of their death during the life of Margaret Read.

By R. S., c. 73, § 3, "when a contingent remainder, executory devise, or estate in expectancy is so limited to a person that it will, in case of his death before the happening of such contingency, descend in fee simple to his heirs, he may before it happens convey or devise it subject to the contingency."

While, upon a strict technical and grammatical construction the case before us is not within the letter of this law, it is within its spirit and within the mischief which the statute was designed to remedy. It was intended to prevent the injustice which would follow if the heir after indirectly profiting through the reception by his ancestor's estate of the purchase money of the property could avail himself of a technical defect in the conveyance, and reclaim the property itself, notwithstanding the ancestor's right to it had become perfected after the execution of his deed.

Applying the rule thus furnished to the case before us, Alvah J. Read's deed would pass his interest in the farm subject to the contingency of his surviving his mother, which he did not do, and hence, his heir, the petitioner, takes his half directly under John Randall's deed, and the only remedy of the grantee is upon

the coven ants of Alvah J.   But the estate of Margaret J. Randall was perfected by the happening of. the contingency, and the respondents are entitled to her rights which by force of the statute she might lawfully convey when she did convey them, subject only to the contingency. which in her case fell out favorably for her grantee.

Even if this petitioner is in a position to assert a technical defect in his adversary's title, which may well be doubted, seeing that his right to all to which he can make any show of title in himself is conceded, nei ther of the positions which he takes to defeat the respondents' title can be sustained.

Not only did Margaret J. Randall have a contingent remainder or an expectant estate in the premises which she might lawfully convey subject to the contingency, by force of the statute, but the title in her which the petitioner seeks to set up is in no proper sense a subsequently acquired title.   It exists only by force of John Randall's deed.   She can claim nothing as heir of Margaret Read whose interest passed to Carville by the same deed in which Margaret J. Randall joined.   When what was before a contingent remainder became not merely a vested remainder but an estate in fee simple in Margaret J. Randall or her assigns on the death of her mother, the source of her title to it was not changed.   All the title she ever had was acquired by virtue of John Randall's deed long before her deed to Carville.   That the contingent future interest ripened in the lapse of time to an absolute estate does not affect the time of its acquisition.   That is determined only by its source.

The case of *Jackson* v. *Vanderheyden*, 17 Johns. 167, much relied on by the petitioner, recognizes the right of a married woman to convey not only an existing but a contingent future interest in real estate, while it denies only the doctrine that her deed with covenants of warranty will operate as an estoppel against her assertion of a subsequently acquired interest.

The interest of Margaret J. Randall cannot be so regarded, and it is not necessary to the proper decision of this case to settle a question upon which such jurists as Spencer, C. J., and Parsons, C. J., seem to have entertained different ideas.

The respondent, Hilton, shows a warranty deed to himself from S. L. Hill, prior deeds which give him a good title to a portion of the land embraced in the petition as tenant in common with the petitioner, possession in himself and his grantors in accordance with these conveyances for sixteen years and improvements which entitle him to have the setting off of the petitioner's half of the farm made in accordance with R. S., c. 88, § 16.

The petitioner's counsel does not undertake to deny this, provided the respondents' seizin and title to some portion of the premises are established.

> *Judgment for partition. The petitioner's undivided half of the premises described in his petition to be set off, subject to and in accordance with R. S., c. 88, §16, as claimed by respondents.*

WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.