## William M. Kellett v. Callie R. Trice.

### No. 1046. Decided January 16, 1902.

**1.—Community Property—Wife's Separate Property—Conveyance.**

A wife joined by her husband conveyed her separate property to a trustee for the purpose, apparent on the face of the instrument, of converting it into community property of the husband and wife by a deed which the trustee thereupon made to the husband. Held, that the conveyances were of no validity and the property remained her separate estate. (Pp. 165-171.)

**2.—Same.**

Property becomes community estate of the husband and wife by virtue of the existence of the facts prescribed by the statute as making it such, and not by their agreement or contracts in the absence of such facts. (P. 169.)

**3.—Deed—Recitals—Consideration.**

See conveyances in which the recitals of consideration were held merely formal, in view of the apparent intention, on the face of the instrument, to simply convert separate into community property by the transaction. (Pp. 166, 167, 171.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

See this case on former appeal, Kellett v. Kellett, 23 Texas Civil Appeals, 571, and on application for writ of error, 94 Texas, 206.

*A. C. Prendergast* and *L. W. Campbell,* for appellant.—We take these positions:

1. That the husband and wife can by an agreement between them, and the deeds by them to and from a trustee, change the wife's separate property into their common or community property, and that these two deeds did this in this case.

2. That if the husband and wife have no such power, and these deeds did not have that effect otherwise, then the considerations were valuable, and thereby made the property their community property.

3. If neither of these positions are correct, that then these deeds had the effect to convey to appellant one half of said property so as to make such half his separate property.

At common law the legal existence of the wife is suspended or incorporated into that of her husband, and by her marriage all her personal property vests in him absolutely, and certain interests in her realty also vest in him. Cartwright v. Hollis, 5 Texas, 153.

The people of this country, when adopting the common law generally, did not want this feature to remain, and hence, at least as early as 1840, passed an act which declared in substance the wife's right to own, in her own separate right, every species of property. But the common law had been so long and firmly established the people determined that in order to prevent any subsequent Legislature from adopting the common law on the question of property between them, to incorporate this provision in the Constitution, viz.:

"All property, both real and personal, of the wife owned or claimed by her before marriage, and that acquired afterwards, by gift, devise, or descent, shall be her separate property." Const., art. 16, sec. 15. But by this it was not intended that once her separate property always her separate property, but by it was meant and intended that as to her property she should in effect be a feme sole, and not covert, in the sense established by the common law; nor was it intended by this provision that she and her husband, by agreement between them, could not change the status of any property belonging to either of them separately.

This same provision in effect has been the law of this country as to the husband, as well as the wife, ever since 1840. Act Jan. 20, 1840.

It could as well be contended that once the separate property of the husband, always such, as it could be that once the separate property of the wife, always her separate property.

If it is held that the separate property of the wife can not be changed

or converted into the community property of the husband and wife, then it must be held that the separate property of neither can be changed into the separate property of the other, and it must also be held that their community property can not be changed into the separate property of either. For the same law which says: "All property * * * of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, * * * shall be the separate property of the wife," also says, "All property * * * of the husband, owned or claimed by him before marriage, that acquired afterwards by gift, devise, or descent * * * shall be his separate property." Rev. Sats., art. 2967. While these two declarations are expressed in different words the effect and meaning is precisely the same— the one applying to the wife and the other to the husband. So also the same law says: "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise, or descent, shall be deemed the common property of the husband and wife." Rev. Stats., art. 2968. The addition of the word "deemed" in this last does not in the slightest change or modify the words "shall be." We know of no other law or rule on these subjects which affects the construction of either in the slightest.

That the separate property of either husband or wife can at their will and pleasure, by following the manner prescribed by law, be changed into the separate property of the other, and that their community can be also changed into the separate of either in the same manner, at their will and pleasure, is settled beyond all controversy by the decisions of all the courts of this State, and will be shown and demonstrated herein; and hence, it follows as a reasonable and necessary deduction that the separate property of the wife, by following the manner prescribed by law, can be changed and converted by the husband and wife into their community, at their will and pleasure.

It is elementary that one person can not compel another to accept property without his consent. In other words, if A makes a conveyance to B of property without B's consent, either express or implied, such conveyance would convey nothing to B; and hence, in the first three of the propositions above, we have stated that the husband and wife "can, by an agreement between them," convey, etc., because the husband can no more convey his separate, or the community, to the wife, without her consent, express or implied, and make it her separate property, than he could convey property to anyone else, without the consent of such person. In all conveyances the consent of the vendee must be had to make a valid conveyance.

As was said by the Supreme Court in Green v. Ferguson, 62 Texas, 529: "That the husband may make a conveyance to the wife to reimburse her for her separate estate used by the community, or by himself, can not be questioned; and that as between them he may make a gift of the common property in existence, or as it comes into existence, can not be denied."

That the wife can convey, by the proper conveyance and intervention of a trustee, her separate property to her husband, so as to make it his separate property, is settled beyond all controversy by the case of Riley v. Wilson, 86 Texas, 240.

It is elementary that whoever has the power, under our law, to own property has also the power to dispose of it. The very power to own presupposes the power to dispose of. In this we refer to persons sui juris—not infants, insane persons, etc. That a married woman as to her own property rights is sui juris we think there can be no question. McKay v. Treadwell, 8 Texas, 180; Rhodes v. Gibbs, 39 Texas, 445; Harris v. Williams, 44 Texas, 126; Ballard v. Carmichael, 83 Texas, 364; Cartwright v. Hollis, 5 Texas, 153; Wood v. Wheeler, 7 Texas, 19; Rogers v. Roberts, 13 Texas Civ. App., 190; Riley v. Wilson, 86 Texas, 241.

The only restriction imposed by law upon the wife as to the disposition of her property is: 1. That the conveyance shall be in writing (Rev. Stats., art. 624). 2. That the husband shall join her in the conveyance, and that she shall acknowledge the same privily (Rev. Stats., art. 635).

It is settled law in this State that the wife can by the joinder of the husband, and her privy acknowledgment, execute a valid and binding trust deed upon her separate property to secure any debt of her husband. Jordan v. Peck, 38 Texas, 429; Keene v. Williamson, 6 Texas, 102; Hollis v. Francois, 5 Texas, 195; Herring v. White, 6 Texas Civ. App., 249.

She can also so make a valid and binding deed of trust on her separate property to secure the debt of a third party in which she has no interest whatever. Hall v. Dotson, 55 Texas, 520.

The wife can also in the same way give a valid deed of trust upon her separate property to secure not only a debt that exists but any debt which may be and is afterwards contracted. McCormick v. Blum, 4 Texas Civ. App., 9; Klein v. Glass, 53 Texas, 44.

And so the wife can in the same way make a valid bond for title to convey her separate estate. Patton v. King, 26 Texas, 686.

And so the wife can in the same way sell her separate property under a power of attorney from her husband, she signing her husband's name and her own, with privy acknowledgment. Rogers v. Roberts, 13 Texas Civ. App., 190.

The court in said case of Roberts v. Rogers also says: "The statute, as we have seen, only requires that the act of sale be freely and willingly made by her without compulsion or restraint, and that this freedom of action be evidenced by her acknowledgment and her privy examination made and had before an authorized officer, and his certificate thereto, and that the sale be made by joint conveyances of the wife and husband. The mode and manner in which the joint conveyance is to be effected is, we think, left by the law to the discretion of the parties concerned, to be selected by them as their situation and convenience may demand."

In the case of McGee v. White, 23 Texas, 180, it is held that the wife may appoint her husband her agent to make contracts to bind her separate property, and that said contracts are perfectly valid; and in the case of Perkins v. Baker, 38 Texas, 45, it is held that when the trustee of the wife's separate property permits the husband, as the agent of the wife, to manage the property, to contract debts in the name of the trustee, the wife's separate property is bound for said debts.

In the case of Ryan v. Ryan, 61 Texas, 474, the Supreme Court says: "Under our system of marital laws as regulated by the Constitution and statutes and as expounded from time to time by this court, the wife can, in a proper case, for the protection of her separate rights, maintain a suit in her own name against her husband."

The Supreme Court in the case of Pitts v. Elsler, 87 Texas, 347, holds that a married woman can not, because she is a married woman, undo her contract, and that in an executed contract she is bound the same as if she were a man.

If the wife under the law has all this power and authority over her separate property, and if under the law she has the power to do all of these things with her separate property and is bound thereby, why is it that she can not, in the way it was done in this case, change or convert her separate property into community property of herself and husband?

Let us see what the differences are between the community property of husband and wife and the wife's separate property. During the marriage the husband has the sole management of the community property, and so he has of the separate property of the wife. Rev. Stats., art. 2967. During the marriage the husband alone may dispose of the community property (Rev. Stats., art. 2968), but she must join him and her privy acknowledgment be taken to convey her separate property. Rev. Stats., art. 635. The community property is liable for the debts of husband and wife, contracted during marriage, and each of them, whether before or during marriage. Rev. Stats., art. 2973. The wife's separate property is liable for debts contracted by her for necessaries furnished herself or children, and for all expenses incurred by the wife for the benefit of her separate property, but the wife's separate property is not liable for separate debts of her husband, nor for ordinary debts. Rev. Stats., art. 2970. So that as between husband and wife the only differences between their community property and the separate property of the wife are these: 1. Her separate property is not liable for his separate or their ordinary community debts. 2. The husband alone can not dispose of her separate property, but she must join in the conveyance, and her privy acknowledgment be taken.

The object of the statute, article 2967, and the Constitution, in declaring what is separate and what is community property of the spouses, and the other statutes, in effect determining what each character of property is liable for, is simply for the protection of their creditors, and to establish the status of property between husband and wife, in the absence of an agreement between them determining its status. The

law, neither by direct provision nor by implication, undertakes to prohibit the husband and, wife from making any contract between themselves when they act through a trustee or with others, to change or alter the status of any property as between themselves. It simply regulates the mode and manner in which this may be done.

*Wm. L. Prather* and *Clark & Bolinger,* for appellee.—The transaction between Kellett and wife and Rotan and the latter and Kellett was, in effect, a post nuptial contract, and void under the laws of Texas. Cavanaugh v. Brown, 1 Texas, 484; Cox v. Miller, 54 Texas, 27; Green v. Ferguson, 62 Texas, 529; Proetzel v. Schroeder, 83 Texas, 684; Groesbeck v. Groesbeck, 78 Texas, 665; Engleman v. Deal, 37 S. W. Rep., 652.

Regardless of the statute, the transaction in question would be held void under the principles of equity as applied in the American States and according to the American doctrine, because a court of equity must always in such transactions inquire whether the contract is fair and just and equitably ought to be enforced, the presumption being always that undue influence rises against the husband in relation to any transfer of property to him by the wife, and the burden is always upon him to show that the transaction was not only deliberately and fairly made, but that it was fair and proper. Hendricks v. Isaacs, 117 N. Y., 411; Farmer v. Farmer, 39 N. J. Eq., 211; Stiles v. Stiles, 14 Mich., 72; McClellan v. Kennedy, 3 Md. Ch., 239; Witbeck v. Witbeck, 25 Mich., 439; Crater v. Crater, 118 Ind., 521.

The pretended arrangement between appellant and appellee in reference to the separate estate of appellee was void for the further reason that the consideration, if any, moving between the parties, was contrary to law, violative of public morals, and against the declared public policy of the State. 2 Beach on Cont., sec. 1543; Merrill v. Peaslee, 146 Mass., 460; Miller v. Miller, 78 Iowa, 177; Copeland v. Boaz, 9 Baxter (Tenn.), 223; Adams v. Adams, 91 N. Y., 381; Boyd v. De Lamontagnie, 73 N. Y., 498; Roberts v. Frisby, 38 Texas, 219.

In the Massachusetts case, Merrill v. Peaslee, supra, the question was discussed most thoroughly and learnedly, and the attention of the court is directed to that case as to the principles which govern public policy in reference to transactions between husband and wife after they are separated and as a consideration for their coming together again.

WILLIAMS, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals for the Third District.

The certificate states that this was an action by appellee against appellant for a divorce and for the adjustment of their rights of property, and to set aside the deeds hereinafter stated. After the divorce was granted, the deeds were set aside and the questions certified arise in this branch of the case.

The circumstances under which the deeds were executed were that plaintiff and defendant had a disagreement, in which plaintiff was in

fault. Defendant left home and remained away from December 9, 1896, until January, 24, 1897, when he returned and remained at home until after the suit for divorce was brought, May 21, 1898.

On the 22d day of January, 1897, plaintiff and defendant joined in the following deed to E. Rotan, trustee:

"The State of Texas, County of McLennan.—Know all men by these presents, that we, W. M. Kellett and Callie R. Kellett, husband and wife, in consideration of one dollar from each to the other paid, and for the purpose of divesting the separate estate and title of us and each of us in and to the property (hereinafter described) in which each of us shall hereafter own, hold, have and enjoy an equal undivided community interest, to the end that all of the same may stand and be as all other property now owned by us, viz., community property, regardless of in whose name the title thereto may stand, and thereby avoid any further necessity of keeping separate accounts of the increase thereof, of the income therefrom, of the expenses of improvements, repairs, insurance, and all other expenses thereon, and that all of the expenses and improvements thereon and on all other of our property may be paid and made from a common fund, and all increase, profit and income of every kind whatsoever from said property hereinafter described shall be and become after this date community property under the laws of the State of Texas, and for the further consideration and purpose of settling all questions now or which may hereafter arise between us, and avoiding any question hereafter between our respective heirs upon the death of either of us, and in consideration of five dollars to us in hand paid by E. Rotan, trustee, for the purposes herein named, have bargained, sold, assigned, transferred, and conveyed, and do by these presents bargain, sell, assign, transfer, and convey unto the said E. Rotan, trustee, the following described property situated in the city of Waco, county of McLennan and State of Texas, to wit. [The property described consists of several parcels of real estate and 238 shares of bank stock.]

"Together with all and singular the rights, members, hereditaments, and appurtenances to the same belonging or in anywise incident or appertaining. To have and to hold all and singular the premises and property above mentioned unto the said E. Rotan, his heirs and assigns forever, in trust, for the purpose of conveying the same to the said W. M. Kellett as the community property of the said W. M. Kellett and Callie R. Kellett, and we do hereby bind ourselves, our heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said E. Rotan, trustee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands this the 22d day of January, A. D. 1897.

"WM. M. KELLETT,
"CALLIE R. KELLETT."

All of the real property and 130 shares of the stock described were the separate property of plaintiff. The other 108 shares of stock were community property.

This deed was freely and voluntarily executed by both parties, acting under advice of their respective attorneys, and was duly acknowledged by plaintiff as a married woman. The only purposes and considerations were those recited.

On the 23d day of January, 1897, Rotan executed and delivered the following instrument:

"The State of Texas, County of McLennan.—Know all men by these presents, that I, E. Rotan, trustee, of said county and State, for and in consideration of $10 to me in hand paid by Wm. M. Kellett, and in further consideration of and for the purpose of carrying into effect the object and purpose of the conveyance to me by said Wm. M. Kellett and his wife, Callie R. Kellett, dated January 22, 1897, of the hereinafter described property, and under and by virtue of the power to me in said conveyance given, and in obedience and compliance therewith, have bargained, sold, assigned, transferred, and conveyed, and by these presents do bargain, sell, assign, transfer, and convey unto the said Wm. M. Kellett the following described property situated in the city of Waco and county of McLennan and State of Texas, viz: [Here follows an accurate description of all the property conveyed.]

"All of which is and shall be the community property of said Wm. M. Kellett and his said wife, Callie R. Kellett, under the laws of the State of Texas, together with all and singular the rights, members, hereditaments, and appurtenances to the same belonging or in any wise incident or appertaining. To have and to hold all and singular the premises and property above mentioned unto the said Wm. M. Kellett as such community property, his heirs and assigns forever.

"Witness my hand, this January 23d, 1897.

"E. ROTAN, Trustee."

The questions asked are as follows:

"1.  Do the facts recited in the deed or contract executed by appellant and appellee to Rotan constitute a valuable consideration?

"2.  Can the wife by conveyance in the manner indicated in the above deed, when joined by her husband in the manner required by statute, convert her separate estate into the community estate of herself and husband?

"3.  Is a valuable consideration resulting to a wife necessary in order to support such a conveyance?"

On the side of the appellant it is asserted that the transaction was a lawful exercise of the wife's statutory power to convey her separate property, and that thereby her title was conveyed to her husband and made a part of the community estate. On the other side, it is urged that the instruments, although having the form of conveyances, could

not legally operate as such, but disclosed merely an attempt by the agreement of husband and wife to convert that which the law made separate property of the latter into common property of the two. On a former appeal, the Court of Civil Appeals sustained the latter contention (Kellett v. Kellett, 23 Texas Civil Appeals, 571), and, after due consideration of the arguments of both parties and the authorities relied on, this court is of the opinion that the conclusion was correct.

It is settled by the decisions in this State that married women have no power, except such as is affirmatively given by statute to bind themselves personally by contracts. Wadkins v. Watson, 86 Texas, 194; Kavanaugh v. Brown, 1 Texas, 481. Among the powers so given is that of making conveyances of their separate property in the mode prescribed in the statute, when joined by their husbands. It is obvious, therefore, that an agreement by a married woman, attempting to convert her separate estate into community property, however executed, must be invalid, unless her act amounts to a conveyance such as is recognized by the law. While it may be true that a wife can not convey her separate property directly to her husband (Graham v. Stuve, 76 Texas, 533), it is nevertheless true that by their joint deed, properly acknowledged, the husband and wife may convey such property to a third person, and the grantee may convey it to the husband, either with or without consideration, although the sole purpose of the transaction is to cause the property to become that of the husband. Riley v. Wilson, 86 Texas, 240. In virtue of her power of conveying, the wife, by pursuing the statutory mode, may mortgage her property to secure the debt of her husband or of a third party, the power to convey the absolute title being held to include the lesser power of mortgaging, and the mortgage being sustained as a species of conveyance.

It is also held that different methods of conveyance may be adopted and that husband and wife are not confined to deeds jointly signed by them. Thus, they may convey through the agency of an attorney in fact, empowered by their joint power of attorney duly executed and acknowledged (Patton v. King, 26 Texas, 685); or the wife may be empowered by the husband to sign his name to the deed and the conveyance thus executed by her for both will pass title. Rogers v. Roberts, 13 Texas Civ. App., 190; 93 Texas, 649. These are but instances of different kinds of conveyances. In each of them, the separate title which the wife possesses, or an interest in it, passes to and vests in the grantee, and her act is therefore strictly within the power given to convey her property. On the other hand, the policy of the law protects the wife's property from liability for her husband's debts, and she can not make it subject to them by mere agreement not amounting to some kind of legal conveyance. Magee v. White, 23 Texas, 180. Her property is protected also against alienations by her husband and she can not, by power of attorney or other mere agreement, enable him to divest her title. Cannon v. Boutwell, 53 Texas, 626.

The power to convey does not, therefore, enable her to contract gen-

·erally with reference to her separate property, but only to dispose, in ·whole or in part, of her title; and the only operation which her conveyances have is to pass such title or some interest in it. Wadkins v. ·Watson, supra.

· The effect of her conveyances, as well as those of others, is governed by the law applicable to the existing facts under which they are made; and the case therefore resolves itself into the inquiry, did the facts essential to make the property in question community property exist when the transaction took place; and, if not, could the husband ·and wife, by their mere volition, make it such in the manner ·attempted?

Property of husband and wife in this State gets its character, as belonging separately to one of them or in common to both, from the statutes defining their separate and community estates. Property which either of them owns before marriage and that which he or she acquires afterwards by gift, devise, or descent is his or her separate property. Property acquired by either after marriage otherwise than by gift, devise or descent is their common property. By construction, property which is acquired after marriage in exchange for separate property, or which is purchased with separate funds, is held to belong to that estate which furnished the consideration. Separate property of ·either spouse may be conveyed to the other in such way as to become his or her separate property, and community property may be so conveyed by the husband to the wife as to make it hers separately. This is true, not because the parties chose to name the property separate, but because the facts transpire to bring it within the statutory definition, and the law, operating upon such facts, vests title in accordance with them. The act of the parties is such as the law defines as necessary to create the separate right. Therefore, the question whether particular property is separate or community must depend upon the existence or non-existence of the facts which, by the rules of law, give character to it, and not merely upon the stipulations of the parties that it shall belong to one class or the other. Thus, when one spouse passes to the other by gift his or her title to separate property, it could not become the community property of both, because the law declares that property so acquired shall be the separate property of the donee; and a gift by the husband to the wife of his interest in community property would become the separate property of the donee for the same reason. And so property acquired in the name of either spouse during marriage, otherwise than by gift, devise, or descent, or in exchange for separate property, would, by force of the statute, be community property. It is true that, in the acquisition or afterwards, the husband may give to the wife all his interest in the ·property and thus, by gift, make it hers; but at last this would be true only because the facts defined in the law exist and the separate right is derived through a gift, the husband having full power over the community estate.

·If the deeds in question were without consideration and passed title

to the husband, under these rules of law, they would vest in him a separate title to the land, because it is the wife's separate title that is attempted to be conveyed and the conveyance would be a gift. Yet the deeds in effect declare that they shall not have this but a different operation. The one power the wife had was to convey her title, and, by her conveyance, invest her grantee with the right conveyed. The power she tried to exercise was, by the form of a conveyance, to make a contract changing the legal character of the property. As we have seen, the power of conveying does not include the power to do any such thing. It has been held in several cases that husband and wife can not, by their mere agreements, alter the character given to property by the law acting upon the facts under which it is acquired. Cox v. Miller, 54 Texas, 27; Green v. Ferguson, 62 Texas, 529.

The admissions made in these cases that community property, in existence or as it comes into existence, may be made the separate property of the wife by gift from the husband, are thoroughly consistent with what we have said. The gift fulfills the requirements of the law under which the title of one is transferred to the other so as to become separate. Here the attempt of the wife is to make a gift without, at the same time, so conveying her title as to make the gift have its proper effect.

Recurring to the principles already stated, we see that, while a married woman, through the intervention of a trustee, may give or sell her property to her husband so as to make it his and, therefore, subject to his control and to his debts, and may also mortgage it to secure his debts, the power is withheld from her, while retaining, to empower him to alienate it, or to subject it to his debts. A more effectual method of defeating the last named restrictions could not be devised than that employed in this case, if it were upheld. All the mischiefs sought to be guarded against would at once flow from such a transaction, and this shows that the objections to it are not of a merely technical character. In our opinion, such transactions have no place in our laws regulating marital rights.

A statement of the effect of a real conveyance by the wife of her separate property, through the medium of a trustee, to her husband, such as has been upheld by this court, will serve to illustrate the difference between it and the transaction in question. By such a conveyance, the wife's title, or a part of it, to the whole or a part of the property would pass to and vest in the husband, and such interest as was conveyed would become his separate property. If only a part were conveyed, the remainder would continue to be her separate property, and would be protected from her husband's debts as well as from alienation by him. Here the wife, while she pretends to divest her whole separate title, does not convey it to her husband, but declares that the instrument shall only operate to make the property belong to the community estate, the effect of which would be to vest in her husband an interest and in herself an interest of a different character from that which she owned and pretended to convey, and to put the whole forever beyond her control and

subject to that of the husband alone. This makes it apparent that this is not really a conveyance of her title such as she could make, but only an agreement by which a change in the character of such title is attempted, without the existence of the facts necessary, under the law, to effect the change.

The wife may hold the title to community property, legally acquired, as well as the husband. If, without consideration, she and her husband should execute such an instrument to a trustee upon the trust that he should reconvey the property to her, and should provide that it should thereby become community property, would it not be evident that the entire substance of such instruments would be the agreement to change the property from separate to community, and that in reality there would be no conveyance of her separate title? We instance a case in which there is no consideration because we do not wish to go beyond the facts of this case.

It is not necessary to hold that a married woman's separate property may not be so conveyed as to become, in law, community property. It may be that a purchase may be made of such property by the husband with community funds, so that the consideration will belong to the wife separately, and the property, taking its place, will belong to the community estate. If this is true, it is because the law and not the mere agreement, would give such effect to the transaction. No such case is presented here.

The deeds are without valuable consideration. The recitals of money paid are evidently merely formal and nominal (Lewis v. Simon, 72 Texas, 475); and, besides, according to the recitals, equal sums were paid to each party, so that the wife received no more than she paid. The other recitals merely give the reasons and purposes actuating the parties and show no benefit to the wife, or detriment, disadvantage, or inconvenience to the husband whatever. The transaction, if the instrument should have effect, would operate wholly to the benefit of the husband without pecuniary consideration received by the wife.

We conclude that the transaction did not change from separate to community the property mentioned in the deeds; and this, with what we have said, answers the questions asked.